UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>GREGORY O'KELLY, a/k/a GREGORY O'KELLEY,<br><br>　　　　　　　Defendant. | CR. 17-50073-02-JLV<br><br><br>ORDER |

## INTRODUCTION

Defendant Gregory O'Kelly, appearing *pro se*, filed a motion for compassionate release together with a brief summary of his current medical conditions. (Dockets 172, 172-1 & 172-2). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. O'Kelly's motion. (Dockets 175-77, 177-1 through 177-3, 178-81, 190, 191-1 through 191-3, 191 & 193). For the reasons stated below, defendant's motion is granted.

## STANDING ORDER 20-06

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of

---

[1]See https://www.sdd.uscourts.gov/so2006 ("SO 20-06").

the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

> a. High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .
>
> b. Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.
>
> c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

2

      d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id. The standing order contains provisions for sharing of critical information between the FPD, the U.S. Attorney, the Probation Office and the court. Id. ¶ 5. The priority of briefing is set according to the different categories of assignment of a defendant.[2] Id. ¶¶ 6-8.

## FACTUAL BACKGROUND

On March 2, 2018, defendant Gregory O'Kelly was sentenced to a term of imprisonment of 121 months for conspiracy to distribute a controlled substance, methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.[3] (Docket 133). This sentence was one month over the statutory minimum term of imprisonment mandated by 21 U.S.C. § 841(b)(1)(A). The sentence was a downward variance from the United States Sentencing Guidelines ("U.S.S.G."). According to Mr. O'Kelly's presentence report ("PSR"), "[b]ased on a total offense level of 29 and a criminal history category of V, the guideline imprisonment range [would have been] 140 months to 175 months." (Docket 122 ¶ 99). The court later reduced Mr. O'Kelly's sentence to 60 months.

---

[2]SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution. See https://www.sdd.uscourts.gov/socraa. The amendments have no impact on the court's analysis of this case.

[3]The sentence was to run concurrent with South Dakota state case #51CR115-003116. (Docket 133 at p. 2). The state case is closed. (Docket 193).

Mr. O'Kelly is currently an inmate at the Federal Medical Center in Rochester, Minnesota. (Docket 172 at p. 6). The parties agree Mr. O'Kelly has a scheduled release date of August 21, 2021. (Dockets 117 at p. 1 & 180 at p. 1 (referencing www.bop.gov/inmateloc/ (Register No. 17056-273)); see also Docket 175 at p. 1013). After Mr. O'Kelly filed his motion for compassionate release, the BOP Inmate Locator modified Mr. O'Kelly's scheduled release date to June 4, 2022. https://www.bop.gov/inmateloc/ (last accessed December 11, 2020). The BOP removed 297 days of credit time earned before the March 2, 2018, judgment. See Dockets 175 at p. 1014 & 190 at p. 1. It was the court's intention at the time of sentencing that Mr. O'Kelly receive full credit for those days while he was also receiving credit for those days in SD #51CR115-003116.[4] As of this date, Mr. O'Kelly had served 74.7 percent of his sentence and under his original status in the BOP, Mr. O'Kelly's home detention eligibility date is February 11, 2021. (Docket 175 at pp. 1013-14). Mr. O'Kelly is 49 years old. Id. at p. 1013.

Mr. O'Kelly's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his personal health during the COVID-19 pandemic. (Docket 172). Mr. O'Kelly suffers from:

- Heart failure. (Docket 175 at p. 6);

---

[4] See Docket 132 at p. 4 ("The Court varied downward to account for the credit for time served the defendant has been detained to this date (298)[.]").

- Cardiac arrhythmia, with an implanted cardiac defibrillator.  Id. at pp. 6-7;

- Thyroid disorder, unspecified.  Id. at p. 6;

- Enlarged prostrate with lower urinary tract symptoms.  Id. at p. 7.

Mr. O'Kelly's chronic conditions are reaffirmed throughout his medical records. See Dockets 175-77.  Mr. O'Kelly daily takes five prescription medications plus aspirin to treat and reduce the risk of death due to his heart conditions. (Docket 175 at pp. 981-82).  One of his daily medications is Lisinopril an angiotensin-converting enzyme (ACE) inhibitor used to lower high blood pressure to prevent heart attacks and strokes.[5]

    Mr. O'Kelly offers that "[i]n 3 years, he has not had a single disciplinary violation."  (Docket 177 at p. 17) (referencing Docket 175 at p. 1018).  "He has completed 175 hours [of educational] program[s] . . . and drug abuse programing."  Id. (referencing Docket 175 at pp. 1015-16).

    Mr. O'Kelly represents that if released from custody "[h]e would reside with his mother, Donna O'Kelly, in Rapid City."  Id. at p. 18.  His mother is "able to transport [him] from Rochester FMC to their home in Rapid City by car" thus "avoid[ing] any potential exposure that could occur on other public forms of transportation."  Id.

---

[5]https://www.webmd.com/drugs/2/drug-6873-9371/lisinopril-oral/lisinopril-oral/details (last visited October 21, 2020).

## MR. O'KELLY'S CLASSIFICATION

On June 8, 2020, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion. (Docket 173). They jointly "agree . . . [Mr. O'Kelly's] case should be categorized as an Intermediate Priority case." Id.

## ANALYSIS

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. O'Kelly exhausted the administrative procedure provision contemplated by § 3582(c)(1)(A). While the motion for compassionate release was pending in federal court, on June 18, 2020, Warden S. Kallis denied Mr. O'Kelly's request for a reduction of sentence or release to home confinement. (Docket 178). The warden's conclusion was based on the standard for "extraordinary or compelling reasons" delineated in "Program Statement

5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>[.]"  <u>Id.</u>  The factors in Program Statement 5050.50 are the same as those stated in the U.S.S.G.[6] <u>Compare</u> (Docket 178 and U.S.S.G. § 1B.1.13 cmt.1(A)-(C)).  However, the court's consideration of extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i) is not tied to U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) (U.S.S.G. 2018) or the COVID-19 home confinement provisions of the CARES Act, Pub. L. No. 116-136, Section 12003(b)(2).

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release."  <u>United States v. McCoy</u>, No. 20-6821, 2020 WL 7050097, at *3 (4th Cir. Dec. 2, 2020).  That task was left to the United States Sentencing Commission.  "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).

---

[6]On March 26, 2020, United States Attorney General William Barr issued a memorandum to the Director of Bureau Prisons captioned "Prioritization of Home Confinement As Appropriate In Response to COVID-19 Pandemic." https://www.bop.gov/coronavirus/ (Last visited October 21, 2020).  Warden Kallis' decision did not mention the memorandum or the option of home confinement.  (Docket 178).

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling. U.S.S.G. § 1B1.13 cmt. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[7]

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[8] See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. McCoy, 2020 WL 7050097; United States v. Jones, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020); and United States v. Gunn, Case No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as

---

[7]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two shy of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

[8]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so. United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

stated in Application Note 1(D)." Brooker, 976 F.3d at 234. The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." Id. The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable." Id. at 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237; see also Gunn, 2020 WL 6813995, at *2 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 2020 WL 6817488, at *9 ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 2020 WL 7050097, at *8 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at

237.   See also McCoy, 2020 WL 7050097, at *9 (same); Jones, 2020 WL 6817488, at *9 (same); Gunn, 2020 WL 6813995, at *2 (same).   The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. O'Kelly argues he meets the criteria of U.S.S.G. § 1B1.13, application note 1(A)(ii).   (Docket 177 at p. 16).   Mr. O'Kelly submits he "is 'suffering from a serious physical or medical condition . . . that substantially diminishes . . . [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover.' "   Id. (citing U.S.S.G. § 1B1.13, note 1(A)(ii)(I)).   The government acknowledges this factor.

> On July 28, 2020, the Department of Justice issued amended guidance on compassionate release.  Based on this revised guidance and a review of the facts surrounding the defendant's case, the government now agrees that, during the COVID-19 pandemic, the defendant's chronic medical condition, specifically congestive heart failure, constitutes a "Serious Heart Condition[] and Other Cardiovascular and Cerebrovascular Disease[]" that presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the defendant's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished by this chronic medical condition and sets forth an "extraordinary and compelling" reason for purposes of 18 U.S.C. § 3582(c).

(Docket 191 at pp. 1-2).

Despite the Department of Justice's evidence and the government's acknowledgement of Mr. O'Kelly's condition, the government "continues to

oppose compassionate release in this matter based on the § 3553(a) factors rather than the absence of compelling reasons under U.S.S.G. § 1B1.13 n. 1(A) and (D)." Id. at p. 2. The government submits "[Mr.] O'Kelly's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors." (Docket 180 at p. 18).

First, the government argues Mr. O'Kelly had "congestive heart failure, heart arrhythmia, and a defibrillator . . . when the Court previously contemplated the appropriate sentence . . . and considered the Sentencing Guidelines and the factors under 18 U.S.C. § 3553(a)." Id. at p. 12. Second, Mr. O'Kelly "would pose a danger to public safety if released." Id. at p. 18. Because the defendant "has an extensive criminal history . . . . two prior felony controlled substance convictions . . . . [and] was involved in distribution of more than 1.5 kilogram of methamphetamine" the government contends "[h]is history of continued narcotics activity is a danger to the community." Id. at pp. 18-19 (referencing PSR ¶¶ 5 & 55-60). Third, the government submits the defendant "presents a great risk of recidivism." Id. at p. 19 (referencing Docket 179). Based on the BOP's analysis, the government contends Mr. O'Kelly obtained "a Medium PATTERN score and risk level" which would place him at a "51% rate" for recidivism "within three years of release." Id. Finally, the government argues Mr. O'Kelly's medical care is being met as he "is in a low-security setting with extensive access to medical care from the Mayo Clinic." Id. at p. 20.

> In reply, Mr. O'Kelly argues:
>
> To be clear, Mr. O'Kelly submits that his age, serious health conditions, his incarceration, and the COVID-19 pandemic, combined, create extraordinary and compelling reasons to warrant compassionate release . . . . The attempt to isolate each condition or risk factor, and isolate the conditions from COVID-19, and isolate incarceration does an injustice to the actual situation Mr. O'Kelly, as a human, faces today.  Taking each factor in isolation ignores the fact that Mr. O'Kelly doesn't get to live his life in isolated situations. He has to deal with all the risks every day.  The one way to reduce this risk is to release Mr. O'Kelly. . . .
>
> Since his offenses, Mr. O'Kelly has completed educational programming, employment, and treatment. . . . Further, Mr. O'Kelly has not had a single disciplinary violation since he has been in custody. . . . He is not presently a danger and reliance upon his prior criminal history is not an accurate reflection of his dangerousness, or lack thereof, now.  Further, any concern regarding danger to the community can be addressed by a period of home confinement.

(Docket 181 at pp. 3 & 6).

Rochester FMC currently has three COVID-19 positive inmates and one positive staff member.   https://www.bop.gov/coronavirus/ (last visited December 11, 2020).   Just 40 days ago, Rochester FMC had 38 COVID-19 positive inmates and six positive staff members.   Id. (visited October 22, 2020).   As mentioned earlier in this order, the government acknowledges Mr. O'Kelly's medical and physical conditions substantially diminish his ability to provide self-care.   See supra at p. 13.

The court finds Mr. O'Kelly met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).   The Centers for Disease Control and Prevention ("CDC") found "adults of any age . . . are at increased risk of severe illness" from COVID-19 if

they have any of the following conditions: "Heart conditions, such as heart failure, coronary artery disease or cardiomyopathies." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited December 11, 2020).

Based on the court's detailed review of the extensive medical records, Mr. O'Kelly's major health issues and risk factors are chronic, that is, medically speaking his conditions will only get worse over time. While not mentioned by the parties, Mr. O'Kelly was a one pack per day cigarette smoker for 20 years. (Docket 175 at p. 242). According to the CDC's new guidance issued October 6, 2020, reports being a current or former smoker creates an "increased risk of severe illness from the virus that causes COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (bold omitted) (last visited October 22, 2020).

These conditions put Mr. O'Kelly's life at risk. The court generally was aware of Mr. O'Kelly's health issues at the time of sentencing. See PSR ¶¶ 81-82. However, the COVID-19 pandemic did not exist at that time. Against these findings, the court must consider if compassionate release comports with the § 3553(a) factors.

In Mr. O'Kelly's case, the "nature and circumstances of the offense"—conspiracy to distribute methamphetamine—is serious. 18 U.S.C. § 3553(a)(1). Mr. O'Kelly accrued eight criminal history points and an additional two points for committing the current offense while under a state court sentence for possession of methamphetamine for a total criminal history score of 10. See PSR ¶¶ 58-63. This placed Mr. O'Kelly in a criminal history category of V. Id. ¶ 63. His criminal history was the result of convictions for driving while under the influence, interference with emergency communications [by taking the telephone away from his wife during an argument when she had called 911] and two separate incidents of possession of methamphetamine. Id. ¶¶ 58-61.

"[T]he history and characteristics of the defendant," requires the court to consider the defendant as a whole person. Koon v. United States, 518 U.S. 81, 113 (1996). Mr. O'Kelly's criminal path was the result of his tumultuous conduct leading up to his former wife filing for divorce and his early-40's introduction to methamphetamine. See PSR ¶¶ 72-75, 83 & 87. The custody sentence in this case is the longest period Mr. O'Kelly has been incarcerated. During this period, he has completed a drug abuse program, participated in a number of educational classes, maintained a number of jobs and has not had a single disciplinary violation,. (Docket 175 at pp. 1015-18).

Contrary to the government's argument, the court was not permitted at sentencing to consider the § 3553(a) factors for a sentence below the mandatory minimum sentence. In the court's view a downward variance from the

14

Sentencing Guidelines, without consideration of the mandatory minimum sentence, would have "reflect[ed] the seriousness of the offense, . . . promote[d] respect for the law, and . . . provide[d] just punishment for the offense . . . [and would have] afford[ed] adequate deterrence to [future] criminal conduct" by the defendant. 18 U.S.C. §§ 3553(a)(2)(A) & (B). Considering the length of the defendant's time in prison and his behavior while incarcerated, as well as the supervised release special conditions imposed at sentencing, additional incarceration is not necessary "to protect the public from further crimes of the defendant." Id. § 3553(a)(2)(C). Mr. O'Kelly's obligation to comply with the terms of supervised release would best "provide the defendant with . . . correctional treatment in the most effective manner." Id. § 3553(a)(2)(D).

Incarceration is not the only "kind[] of sentence[] available." Id. § 3553(a)(3). A noncustodial sentence will limit Mr. O'Kelly's liberty interests through supervised release and he will face harsh consequences if he violates the special conditions activated upon his release from BOP custody. United States v. Gall, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005), *rev'd*, 446 F.3d 884 (8th Cir. 2006), *rev'd*, 552 U.S. 38 (2007). Those special conditions promote respect for the law, protect the public and do not constitute any approval of Mr. O'Kelly's criminal conduct. Id.

The controlled substance statute mandated a mandatory minimum sentence, but this is just one factor for the court to consider. 18 U.S.C. § 3553(a)(4). At this juncture, use of the First Step Act will not create "unwarranted sentence disparities among defendants with similar records who

have been found guilty of similar conduct." Id. § 3553(a)(6). The court finds compassionate release is appropriate and Mr. O'Kelly will not pose a danger to the public.

## ORDER

Good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 172) is granted.

IT IS FURTHER ORDERD that the defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that upon his release, Mr. O'Kelly shall reside at the home of his mother, Donna O'Kelly, in Rapid City, South Dakota.

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP Mr. O'Kelly must report, by telephone, 605-339-5920, to the United States Probation and Pretrial Services Office for the District of South Dakota in the United States Courthouse, 515 Ninth Street, Room 203, Rapid City, South Dakota, 57701.

IT IS FURTHER ORDERED that Mr. O'Kelly shall remain on supervised release for five years, subject to the mandatory and standard conditions of supervision and the special conditions of supervision imposed in the amended sentence of November 26, 2019. (Docket 164 at pp. 4-5).

IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

Dated December 11, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE